453 F.2d 1018
 79 L.R.R.M. (BNA) 2272, 67 Lab.Cas. P 12,357
 Nora RETANA, individually, and Nora Retana, as member of
Apartment, Motel, Hotel and Elevator Operators Union Local
No. 14, on behalf of herself and all other members of Local
No. 14 similarly situated, Plaintiffs-Appellants,
v.
APARTMENT, MOTEL, HOTEL AND ELEVATOR OPERATORS UNION, LOCAL
NO. 14, AFL-CIO, an unincorporated association, Adlaw
Investment Company, Ltd., a limited partnership, and Doe One
through Doe Five, Defendants-Appellees.
 No. 23624.
 United States Court of Appeals,
Ninth Circuit.
 Jan. 10, 1972.
 
 Norman S. Nayfach, Marvin S. Kayne, Michael S. Sorgen, of San Francisco Legal Assistance Foundation, San Francisco, Cal. for plaintiffs-appellants.
 Philip Paul Bowe, of Carroll, Davis, Burdick & McDonough, Kelso, Cotton, Seligman & Ray, San Francisco, Cal., for defendants-appellees.
 Before HAMLIN, BROWNING, and TRASK, Circuit Judges.
 BROWNING, Circuit Judge:
 
 
 1
 Appellant was a member of appellee union, employed as a hotel maid by appellee company.[1] She was discharged, and filed this suit. Her complaint alleged three causes of action, two based upon wrongful discharge in violation of the collective bargaining agreement between the union and employer, the third upon a breach by the union of its duty of fair representation to herself and other Spanish-speaking members of the union. The district court dismissed the wrongful discharge causes of action because appellant failed to exhaust the remedies available to her under the collective bargaining agreement. It dismissed the fair representation cause of action for want of jurisdiction. We reverse and remand.
 
 
 2
 * It is conceded that the district court had jurisdiction of the wrongful discharge causes of action under section 301(a) of the Labor Management Relations Act, 29 U.S.C. Sec. 185(a).[2] See Vaca v. Sipes, 386 U.S. 171, 186-187, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).
 
 
 3
 We conclude that the court also had jurisdiction to decide the fair representation claim under 28 U.S.C. Sec. 1337.[3] The duty of fair representation is a statutory duty implied from the grant to the union by section 9(a) of the National Labor Relations Act, 29 U.S.C. Sec. 159(a),[4] of exclusive power to represent all employees of the collective bargaining unit.[5] Vaca v. Sipes, supra, 386 U.S. at 177, 87 S.Ct. 903, 17 L.Ed.2d 842; Ford Motor Co. v. Huffman, 345 U.S. 330, 337, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); Williams v. Pacific Maritime Ass'n, 384 F.2d 935, 936-937 (9th Cir. 1967). The National Labor Relations Act is an "Act of Congress regulating commerce." See Capital Service, Inc. v. NLRB, 347 U.S. 501, 504, 74 S.Ct. 699, 98 L.Ed. 887 (1954). Suit for breach of the duty is one "arising under" such a statute within the meaning of 28 U.S.C. Sec. 1337.
 
 
 4
 On the basis of this analysis, the courts of appeals of three circuits have held that section 1337 confers jurisdiction over suits alleging breach of the duty of fair representation. Waters v. Wisconsin Steel Works, 427 F.2d 476, 490 (7th Cir. 1970); De Arroyo v. Sindicato de Trabajadores Packinghouse, 425 F.2d 281, 283 n.1 (1st Cir. 1970); and Nedd v. United Mine Workers, 400 F.2d 103, 106 (3d Cir. 1968). This conclusion is supported by Tunstall v. Brotherhood of Locomotive Firemen, 323 U.S. 210, 213, 65 S.Ct. 235, 89 L.Ed. 187 (1945), which holds that section 1337 confers jurisdiction upon federal district courts over suits for breach of a duty of fair representation implied from "comparable provisions of the Railway Labor Act." Ford Motor Co. v. Huffman, supra, 345 U.S. at 337, 73 S.Ct. at 686. See note 5 supra; International Ass'n of Machinists v. Central Airlines, 372 U.S. 682, 690 n.13, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963); Brady v. TWA, 401 F.2d 87, 94 (3d Cir. 1968). It is also supported by Syres v. Oil Workers, International, 350 U.S. 892, 76 S.Ct. 152, 100 L.Ed. 785 (1955), which involved 28 U.S.C. Sec. 1331, the companion statute conferring subject matter jurisdiction in cases involving suits arising under a federal statute. See Machinists v. Central Airlines, supra; De Arroyo v. Sindicato de Trabajadores Packing, supra.
 
 
 5
 Although, as we have said, the district court spoke in terms of lack of jurisdiction, there is some indication that the court may have intended to dismiss the fair representation claim for failure to state a cause of action under section 9(a).[6]
 
 
 6
 The obstacles to affirmance of a dismissal on this ground are formidable. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Dismissal for insufficiency as a pleading is proper only when the complaint affirmatively discloses "some insuperable bar to relief." Wright, Federal Courts 286 (1963). See Harman v. Valley National Bank, 339 F.2d 564 (9th Cir. 1964), and authorities there cited. Mere vagueness or lack of detail will not justify dismissal. Id. at 567.
 
 
 7
 In Czosek v. O'Mara, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970), the Supreme Court sustained a complaint that alleged violation of the duty of fair representation only in general and conclusory terms.[7] The Court said (27, 90 S.Ct. 772):
 
 
 8
 "Although the complaint was not as specific with regard to union discrimination as might have been desirable, we deem the complaint against the union sufficient to survive a motion to dismiss. As the Court of Appeals indicated, 'where the courts are called upon to fulfill their role as the primary guardians of the duty of fair representation,' complaints should be construed to avoid dismissals and the plaintiff at the very least 'should be given the opportunity to file supplemental pleadings unless it appears "beyond doubt" that he cannot state a good cause of action."'
 
 
 9
 Measured by these generous standards, the allegations of the present complaint relating to breach of the union's duty of fair representation were adequate to withstand a motion to dismiss.
 
 
 10
 Appellant alleges that she and a "very substantial" number of other members of the union understand little English and are "almost entirely limited for communication" to Spanish. Many are recent immigrants and lack familiarity with "the customs and practices of American labor management relations." She alleges that the union violated its duty of fair representation to these members: (1) by failing to provide bilingual liaison between such members and the union; (2) by failing to provide them with a copy of the collective bargaining agreement in Spanish; (3) by failing to explain their rights and responsibilities as union members to them, including their right to have the union process a grievance on their behalf; and (4) by failing to seek the establishment through collective bargaining of a bilingual supervisorial system that could direct, advise, and assist such union members in the performance of their employment duties.
 
 
 11
 The district court thought the allegations insufficient because they did not "concern any provision of the collective bargaining agreement." See note 6. This places too narrow a construction either upon the union's duty or the allegations of the complaint, or both.
 
 
 12
 The duty imposed upon a union is broad and demanding. It must "serve the interests of all members without hostility or discrimination toward any, . . . exercise its discretion with complete good faith and honesty, and . . . avoid arbitrary conduct." Vaca v. Sipes, supra, 386 U.S. at 177, 87 S.Ct. at 910.[8]
 
 
 13
 Moreover, most of the allegations of this complaint "concern" matters related to the negotiation or administration of the collective bargaining agreement. Such matters are not beyond the duty of fair representation simply because they do not involve the breach of a specific provision of the collective bargaining agreement:[9]"The bargaining representative's duty not to draw 'irrelevant and invidious' distinctions among those it represents does not come to an abrupt end . . . with the making of an agreement between union and employer. Collective bargaining is a continuous process. Among other things, it involves day-to-day adjustments in the contract and other working rules, resolution of new problems not covered by existing agreements, and the protection of employee rights already secured by the contract. The bargaining representative can no more unfairly discriminate in carrying out these functions than it can in negotiating a collective agreement." (Footnotes omitted and emphasis added). Conley v. Gibson, supra, 355 U.S. at 46, 78 S.Ct. at 102.
 
 
 14
 It is not difficult to conceive a set of facts that might be proven under the allegations of this complaint, in which a minority group of union members were effectively deprived of an opportunity to participate either in the negotiation of a collective bargaining contract or in the enjoyment of its benefits by a language barrier which union officials exploited, or took no steps to overcome. Such acts or omissions[10] of union officials might well violate the union's duty "to make an honest effort to serve the interests" of all members of the bargaining unit. Ford Motor Co. v. Huffman, supra, 345 U.S. at 337, 73 S.Ct. at 686. See also Conley v. Gibson, supra, 355 U.S. at 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80; Wallace Corp. v. National Labor Relations Board, 323 U.S. 248, 255, 65 S.Ct. 238, 89 L.Ed. 216 (1944).
 
 
 15
 It is no answer to say that the complaint relates to appellee union's "internal" policies and practices. The duty of fair representation "arises out of the union-employee relationship and pervades it." Id. 400 F.2d at 106. Nothing could be more peculiarly an internal interest of a union than the control over admission to union membership that was held subject to the duty of fair representation in Wallace Corp. v. Labor Board, supra. As a practical matter, intra-union conduct could not be wholly excluded from the duty of fair representation, for as the facts of Wallace Corp. and the allegations of the present complaint suggest, internal union policies and practices may have a substantial impact upon the external relationships of members of the unit to their employer. This does not mean, as appellee union suggests, that the union will be exposed to harassing litigation by dissident members over every arguable decision made in the course of the day-to-day functioning of the union. Though the duty of fair representation is broad, not all union practices have a substantial impact upon members' rights in relation to the negotiation and administration of the collective bargaining agreement. Even as to those that do, it will be the unusual case in which hostile discrimination, bad faith, dishonesty, or arbitrary conduct can be alleged.
 
 
 16
 It would be ill-advised at this early stage in the proceeding to attempt a more precise delineation of the scope of the duty of fair representation with respect to facts that are still largely undisclosed, or even to conclude that appellants have alleged a triable claim. We hold only that because it is not clear beyond doubt that appellants will be unable to prove a violation of the union's duty under the allegations of their complaint, it was error to dismiss for failure to state a cause of action. See Harman v. Valley National Bank, supra, 339 F.2d at 567.[11]
 
 II
 
 17
 We turn to the ground relied upon by the district court in dismissing appellant's cause of action for wrongful discharge, namely, that the complaint did not sufficiently allege the exhaustion of remedies provided by the collective bargaining agreement.
 
 
 18
 Appellant alleged that she "undertook to exhaust all grievance procedures available to her under the aforesaid collective bargaining contract." The day following her discharge she "fully reported the fact of such unlawful discharge" to the union. However, "despite plaintiff's repeated insistence that the Union take immediately all appropriate action to rectify the matter of her unlawful discharge, the Union failed to process the unlawful discharge as a grievance or to advise or inform plaintiff of her right to have such a grievance processed." The union's conduct, appellant alleged, "was arbitrary, discriminatory and/or in bad faith," and "in disregard of defendant Union's duty of fair representation." Appellant also alleged that during the six months prior to her discharge she "reported several employment grievances to defendant Union. On the occasion of each such report defendant Union failed to take any meaningful action to process the grievance."
 
 
 19
 In considering the sufficiency of these allegations, we reiterate the limited role of a motion to dismiss for failure to plead a cause of action. Where, as here, the complaint seeks to allege a justifiable excuse for failure to exhaust contract remedies, general allegations suffice, and the complaint may not be dismissed unless the court is "unable to say beyond a doubt that plaintiffs' allegations . . . are insufficient to excuse their failure to exhaust the grievance provisions of their contract." Waters v. Wisconsin Steel Works, supra, 427 F.2d at 490.
 
 
 20
 Under this standard, dismissal for insufficient allegations of exhaustion of contract remedies was improper.
 
 
 21
 The general rule is that "the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement. Republic Steel Corp. v. Maddox, 379 U.S. 650, [85 S.Ct. 614, 13 L.Ed.2d 580]." Vaca v. Sipes, supra, 386 U.S. at 184-185, 87 S.Ct. at 914. But there are exceptions. As the Court stated in Vaca:
 
 
 22
 "[T]he wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." Id. at 186, 87 S.Ct. at 914.[12]
 
 
 23
 See Czosek v. O'Mara, supra, 397 U.S. at 27-28, 90 S.Ct. 770, 25 L.Ed.2d 21; Glover v. St. Louis-S.F. R.R. Co., 393 U.S. 324, 330-331, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969).
 
 
 24
 Appellee union argues that the Vaca exception is inapplicable because in that case the collective bargaining agreement provided that only the union could initiate a grievance, while in this case section 5(b) of the collective bargaining contract provides that the employee himself may do so.[13]
 
 
 25
 Appellant disputes this interpretation, arguing that it appears from section 39 of the contract[14] that the union must initiate the grievance, and that all section 5(b) gives the employee is a right to appeal if the union and employer cannot agree. At the least, appellant argues, the contract is ambiguous in this respect, and national labor policy suggests that the ambiguity should be resolved in favor of exclusive union control over initiation of grievances. Cox, "Rights under a Labor Agreement," 69 Harv.L.Rev. 601, 657 (1956).
 
 
 26
 We need not decide whether we agree with the district court's rejection of these arguments,[15] for even if the district court correctly interpreted the contract as giving an individual employee the right to initiate a discharge grievance independently of the union, appellant may be able to prove a justifiable excuse for failing to do so.
 
 
 27
 Although the district court agreed with appellees' construction of the contract, it conceded that the contract was ambiguous. Since it is not clear from the contract that the individual employee could initiate a grievance, this alone may excuse exhaustion, particularly in view of appellant's efforts to get the union to act in her behalf. Cf. Glover v. St. Louis-S.F. R.R., supra, 393 U.S. at 331, 89 S.Ct. 548, 21 L.Ed.2d 519. This conclusion is reinforced by appellant's allegation that she is unable to read English. In such exceptional circumstances, exhaustion of contractual remedies may be excused. Cf. Donato v. United States, 302 F.2d 468, 470 (9th Cir. 1962); Levy, "Union Control of Employee Grievances," 118 U.Pa.L.Rev. 1036, 1045 (1970).
 
 
 28
 Moreover, as appellee union itself points out, Article IV of the union's constitution and by-laws provides that the union's business representative "shall 'investigate all controversies arising over the loss of employment or other grievances of members' brought to the Union's attention." Appellant may be able to prove that the union failed without rational justification to discharge this obligation though asked by appellant to do so, and that this breach of the union's duty of fair representation was the operative cause of appellant's failure to exhaust the contract remedy. Or, wholly aside from Article IV, appellant's proof may show that the effective cause of appellant's failure to exhaust was the union's failure to advise appellant of her contract rights, and that this omission constituted a breach of the union's duty of fair representation.
 
 III
 
 29
 The district court did not consider appellees' arguments that all of appellant's causes of action were barred by failure to allege exhaustion of certain internal remedies said to be available to members of the union under the union's constitution and by-laws. Appellee union has raised this issue on appeal as an alternate ground for affirmance.[16]
 
 
 30
 Appellee union asserts that Article VIII, Section 2 of the union's international constitution and by-laws gives an individual member aggrieved by any action of his local union the right to petition the General President of the international union to review the action of the local union.
 
 
 31
 Although a copy of appellee union's local constitution and by-laws is attached to appellant's complaint, the union's international constitution and bylaws are not part of the record on appeal, and, so far as appears, were not before the trial court. The contents of the international constitution and by-laws is an unresolved question of fact. It would be improvident, even if it were permissible, for us to decide that these documents afforded appellant an adequate remedy simply by examining the excerpts quoted in appellees' briefs.
 
 
 32
 Aside from the insufficiency of the record, we cannot say beyond doubt that appellant will not be able to prove a justifiable excuse for failure to exhaust internal union remedies.
 
 
 33
 Appellant asserts that she was not given a copy of the international union's constitution and by-laws, and, in view of this fact, plus her inability to understand English and the union's failure to explain her rights in Spanish, she was excusably ignorant of any available remedy within the union, relying on Chew v. Manhattan Laundries, 134 N.J.Eq. 566, 36 A.2d 205, 208 (1944).
 
 
 34
 Moreover, remedies need not be exhausted if it would be futile to do so.[17] This is true of "any remedy administered by the union, by the company, or both, to pass on claims by the very employees whose rights they have been charged with neglecting and betraying." Glover v. St. Louis-S.F. R.R., supra, 393 U.S. at 330-331, 89 S.Ct. at 552, 21 L.Ed.2d 519.[18] Proof of appellant's allegations that she repeatedly solicited the union's assistance without result might excuse failure to exhaust internal union remedies on the ground that she reasonably believed further efforts to invoke such remedies would be futile. See Waters v. Wisconsin Steel Works, supra, 427 F.2d at 489.
 
 
 35
 Reversed and remanded for further proceedings.
 
 
 
 [1]
 No appearance was filed in this court on behalf of the employer
 
 
 [2]
 29 U.S.C. Sec. 185(a):
 "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."
 
 
 [3]
 28 U.S.C. Sec. 1337:
 "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."
 If the amount involved exceeds $10,000, jurisdiction would also be conferred by 28 U.S.C. Sec. 1331(a):
 "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."
 
 
 [4]
 29 U.S.C. Sec. 159(a):
 "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collectivebargaining contract or agreement then in effect: Provided further, That the bargaining representative has been given opportunity to be present at such adjustment."
 
 
 [5]
 The duty of fair representation was first announced in a case involving the Railway Labor Act. Steele v. Louisville & Nashville R.R., Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). The doctrine was later applied to a case under the National Labor Relations Act in Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953)
 
 
 [6]
 The court stated, "plaintiff's allegations with respect to Spanish speaking members do not . . . concern any provision of the collective bargaining agreement," suggesting that the court thought such a relationship to be an essential element of a cause of action under section 9(a)
 
 
 [7]
 The court of appeals reversed the dismissal of the complaint although the court conceded that the exact basis of plaintiffs' claim could not be fairly inferred from the face of the complaint. The court said, "by the exercise of the liberal pre-trial and discovery devices available to them the defendants will be able to dispel any possible prejudice to them arising from the very broad nature of the allegations." O'Mara v. Erie Lackawanna R.R. Co., 407 F.2d 674, 679 (2d Cir. 1969)
 Of course, mere conclusory allegations would not suffice in opposing a motion for summary judgment. Hardcastle v. Western Greyhound Lines, 303 F.2d 182, 186 (9th Cir. 1962).
 
 
 [8]
 The Vaca opinion's repeated reference to "arbitrary" union conduct reflects a calculated broadening of the fair representation standard. Feller, "Vaca v. Sipes: One Year Later," in N.Y.U. Twenty-First Annual Conference on Labor 141, 167 (1969). It also represents a rejection of such cases as International Longshoremen's and Warehousemen's Union v. Kuntz, 334 F.2d 165, 171 (9th Cir. 1964), holding that "a bad faith motive, an intent to hostilely discriminate" is required, as distinguished from "arbitrary and unreasonable action." Vaca also rejected the thesis of Colbert v. Brotherhood of Railroad Trainmen, 206 F.2d 9 (9th Cir. 1953), relied upon by appellee union, that a suit for unfair representation lies only in "cases wherein collective bargaining agreements containing invidious proscriptive factors that are inimical to statutory or constitutional right, such as racial discriminations, are presented to the court" (13)
 
 
 [9]
 Our contrary holding in Hayes v. Union Pac. R.R. Co., 184 F.2d 337 (9th Cir. 1950), heavily relied upon by appellee union, was expressly disapproved in Conley v. Gibson, 355 U.S. 41, 44 n. 4, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)
 Conley v. Gibson is illustrative of many cases in which union conduct that was entirely consistent with the express terms of the collective bargaining agreement was nonetheless held to violate the duty of fair representation. See, e. g., Wallace Corp. v. National Labor Relations Board, 323 U.S. 248, 65 S.Ct. 238, 89 L.Ed. 216 (1944).
 
 
 [10]
 A union's obligation of fair representation is not necessarily satisfied by refraining from wrongful conduct. A union "may not," for example, "arbitrarily ignore a meritorious grievance or process it in perfunctory fashion." Vaca v. Sipes, supra, 386 U.S. at 191, 87 S.Ct. at 917. See also Local Union No. 12, United Rubber Workers v. NLRB, 368 F.2d 12, 18 (5th Cir. 1966); De Arroyo v. Sindicato de Trabajadores Packinghouse, supra, 425 F.2d at 284. Since a union can be sued for breach of its duty of fair representation if it fails to process a grievance, there is no apparent reason why it cannot also be sued "if it fails to advise the employees to file a grievance . . . ." Feller, "Vaca v. Sipes: One Year Later," in N.Y.U. Twenty-First Annual Conference on Labor 141, 144 (1969). Similarly, failure to compel the employer to make payments to a health and welfare fund "may well constitute a breach of the union's equitable duty as a fiduciary representative of employees to act in their interest, fairly and in good faith, and without unreasonable discrimination throughout the area in which it has been empowered to function." Nedd v. United Mine Workers, supra, 400 F.2d at 105
 
 
 [11]
 Appellee union also notes that section 9(a) applies only to "appropriate" bargaining units within the scope of the Labor Management Relations Act, i. e., only to units composed of employees whose employers' operations "affect commerce" within the meaning of the Act. Appellee union argues that the complaint is insufficient because it does not allege that appellant is employed by employers whose operations have the requisite impact on commerce. Keeping in mind that pleadings are to be "construed as to do substantial justice," Rule 8(f), Fed.R. Civ.P., appellant's allegation that the court had jurisdiction under section 9(a) gave adequate notice that appellant was prepared to prove the required effect on commerce. Cf. Humphrey v. Moore, 375 U.S. 335, 344 n. 6, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). It would be particularly inappropriate to affirm the dismissal because of the omission of a more particular allegation on this subject. Appellees did not raise the issue in the district court where the oversight could have been readily corrected by amendment
 
 
 [12]
 One of the cases cited by the court in support of this proposition was Hardcastle v. Western Greyhound Lines, 303 F.2d 182 (9th Cir. 1962). See also Lewis, "Fair Representation in Grievance Arbitration," 1967 Supreme Court Review 81, 87; Note, The Duty of Fair Representation in the Administration of Grievance Procedures under Collective Bargaining Agreements, 1968 Wash.U.L.Q. 437, 444-445; The Supreme Court, 1966 Term, 81 Harv.L.Rev. 252, 254 (1967)
 
 
 [13]
 Section 5(b) of the contract provides:
 "Employees may be discharged without notice for just cause. Any employee who feels he has been unjustly discharged shall have the right to appeal to the Adjustment Board hereinafter provided. Discharge cases must be taken up with the Adjustment Board within five (5) days from date of discharge or right of appeal is lost."
 
 
 [14]
 Section 39 of the contract provides in relevant part:
 "(a) Any and all disputes and grievances of an Employer, employee, or the Union that may arise with reference to the provisions of this Agreement or the enforcement thereof which cannot be settled directly by the Employer and the Union within two (2) business days, shall be referred to a Board of Adjustment upon the written request of either party."
 
 
 [15]
 The proper construction of these provisions of the contract will remain an issue in the trial court. Future proceedings in the trial court may cast additional light on their meaning
 If the power to initiate a discharge grievance rested with the union, appellant has alleged ample justification for failure to exhaust the contract remedy. Appellee union does not contend the contrary.
 
 
 [16]
 Failure to exhaust internal union remedies could not be urged by the employer as a defense in a suit by the employee for wrongful discharge. Brady v. TWA, 401 F.2d 87, 102 (3d Cir. 1968)
 
 
 [17]
 This excuse for failure to exhaust internal union remedies would apply to the wrongful discharge grievance as well as to the alleged breach of the duty of fair representation to the Spanish-speaking minority, in view of appellant's allegations that the union also breached its duty of fair representation to appellant in failing to process her discharge grievance or to advise her of her right to do so
 
 
 [18]
 Steele v. Louisville & Nashville R.R., 323 U.S. 192, 206-207, 65 S.Ct. 226, 89 L.Ed. 173 (1944); Fruit & Vegetable Packers & Warehousemen Local 760 v. Morley, 378 F.2d 738, 745 (9th Cir. 1967) ("the exhaustion of intraunion remedies doctrine cannot apply unless there is available from the union a remedy which is neither uncertain nor futile"); Calagaz v. Calhoon, 309 F.2d 248, 260 (5th Cir. 1962). See also Farowitz v. Associated Musicians of Greater New York, 330 F.2d 999, 1002 (2d Cir. 1964); Detroy v. American Guild of Variety Artists, 286 F.2d 75, 81 (2d Cir. 1961)