**Gary SAVEL, Plaintiff,**

v.

**The DETROIT NEWS, a Michigan Corporation and Newspaper Drivers and Handlers Local Union No. 372, an affiliate of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, all jointly and severally, Defendants.**

**Civ. No. 5–70829.**

United States District Court,
E. D. Michigan, S. D.

Aug. 12, 1977.

Richard J. Clark, Detroit, Mich., for plaintiff.

Robert J. Battista, James P. Hoffa, Detroit, Mich., for defendants.

## OPINION

GUY, District Judge.

The court has before it cross-motions for Summary Judgment filed by the parties to this litigation. This suit involves an alleged breach of a collective bargaining contract by defendant, The Detroit News, and of the duty of fair representation by defendant, Local Union No. 372, under Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185. Because the parties have submitted cross-motions for summary judgment, and also finding no genuine issue of material disputed fact, the court is prepared to make a final and complete disposition of this case.

Plaintiff, Gary Savel, has been an employee of defendant The Detroit News and a member of the bargaining unit represent-

ed by defendant Local Union No. 372 (union) since December 11, 1969. During relevant periods of this lawsuit, plaintiff was covered by a contract negotiated by defendants employer and union which had a term from June 18, 1971 to June 17, 1974. On March 8, 1974, plaintiff sustained disabling injuries in a non-occupational automobile accident. As a result, plaintiff sought benefits under Section 20 of the contract which provided for benefits to be paid to employees for bona fide illness or non-occupational accident causing a disability for five (5) days or more.

Section 20, as it read on March 8, 1974, entitled plaintiff to receive disability benefits equal to his normal rate of pay ($234.34) per week. This amount was received by plaintiff from March 8, 1974 until October 13, 1974. In addition, because plaintiff's disability was the result of an automobile accident, he was also entitled to receive wage loss benefits of $199.19 per week under the Michigan "No Fault" insurance law.

Upon termination of the 1971–1974 contract, the defendants employer and union negotiated and ultimately agreed upon a successor three-year agreement effective June 18, 1974 through June 17, 1977. The new contract provided for a number of substantial changes both as to the duration and amount of benefits available to an employee covered by Section 20 of the contract. In essence, it is the effect of these amendments on the plaintiff that forms the nub of the dispute between the parties herein. Two of the changes affected plaintiff relative to the amount of accident benefits. First, an employee's accident benefit was decreased by the amount of "no fault" insurance benefits received by that employee. Second, the amount of benefits payable under Section 20 was reduced from the full regular weekly straight-time earnings to 75 percent of that amount (except for the first twenty (20) days of the disability). As a result of these changes and the fact that plaintiff was already receiving 85 percent of his full regular weekly straight-time earnings from the work loss provision of Michigan's "No Fault" insurance, the plaintiff became ineligible for benefits under Section 20 of the contract.

A third change in Section 20 had an effect on the duration of accident benefits received by plaintiff. In the original Section 20, there was no outer recovery of accident benefits by an eligible employee; however, in the new contract negotiated in 1974, Section 20 was amended to restrict benefits "for a duration of time commensurate with their [employees] length of seniority for any one illness." Plaintiff's "no-fault" insurance benefits expired on March 8, 1977, and thus, even under the terms of the amended Section 20, plaintiff became eligible to receive 75 percent of his full regular weekly straight-time earnings. Although the court has insufficient information to calculate the exact length of seniority accumulated by plaintiff before his disability, he was working regularly for the defendant company from December 11, 1969 until March 8, 1974, or approximately four years and three months. Under the terms of the amended Section 20, plaintiff would now be eligible for benefits under that Section for four years and three months commencing March 8, 1977, however, at a rate equal only to 75 percent of his regular weekly straight-time earnings.

Pursuant to the changes made to Section 20 as indicated above, accident benefits to plaintiff were terminated on October 20, 1974. Some time afterwards, on March 3, 1975, plaintiff inquired from the union as to the procedures for filing a grievance relative to the termination of his accident benefits under Section 20. The union provided the plaintiff with the appropriate information and a grievance was submitted by plaintiff to the union for processing. The union refused to process the grievance, however, because in the judgment of the union officials, it was not a meritorious grievance since the defendant company was clearly complying with the terms of amended Section 20. No further action was taken by plaintiff at either the local or international union level to review the initial union decision not to process his grievance, although review procedures are provided in

the International Union Constitution, Article XIX, Constitution of the International Brotherhood of Teamsters (1971).

 Thereafter, this lawsuit was commenced to challenge the union's right to refuse to process plaintiff's grievance and the company's right to refuse to pay benefits under Section 20 of the contract. The collective bargaining agreement provides a procedure for resolving disputes of this nature. This procedure includes a comprehensive grievance-arbitration mechanism culminating in final and binding arbitration. The United States Supreme Court has held that such grievance and arbitration procedures, voluntarily entered into by the parties, should serve as the exclusive remedy for breach of contract claims. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1966); see also *Willetts v. Ford Motor Co.*, 93 LRRM 2832 (E.D.Mich.1976). Thus, in the ordinary course of events, contract disputes must be resolved through the procedures provided by the parties themselves and resort to the federal judicial process is inappropriate. However, as the Supreme Court also noted in *Vaca, supra*, under some circumstances there is an exception to the exclusive remedy of the grievance-arbitration procedure. Where the union is given the sole power to act under the grievance-arbitration provision of the contract and the union has wrongfully refused to process the employee's grievance, the Court held that the employee may seek judicial enforcement of his contract rights. In other words, an employee may only seek judicial enforcement of contract rights where the union has breached its duty of fair representation in processing the employee's grievance through the grievance-arbitration procedure.

As an initial matter, however, this circuit has held that a party must exhaust internal union remedies before being permitted to sue the union for breach of its duty of fair representation. *Bsharah v. Eltra Corp.*, 394 F.2d 502 (6th Cir. 1968), and *Willetts v. Ford Motor Co., supra*. In the instant case, the constitution of the International Brotherhood of Teamsters, Article XIX, contains a procedure whereby members of local unions can contest action taken by local officials. Although it is not clear by Article XIX, Section 9(a), whether monetary relief could be granted to an aggrieved member, it is clear by the terms of that Section that the local union may be commanded to perform specified acts which were wrongfully refused a member of the local.

As already noted, the union refused to process plaintiff's grievance because it concluded that the company was complying with the terms of the amended Section 20. Had plaintiff appealed the local union's refusal to process his grievance to the International Union, it would have been within the powers granted to the International Union under its constitution to require the local union officials to process the grievance. Furthermore, this relief would have been satisfactory to the plaintiff because it would have still been possible for the local union to file plaintiff's grievance even after exhaustion of intra-union appeals. Unlike other contracts, the contract involved in this case does not place strict time limitations on the filing or appeal of a grievance by the union. Rather, Section 3(d) of the contract states that: "Grievances not protesting discharge or disciplinary action shall be filed in writing with the other party without undue · delay." Determining whether the union took undue delay in filing the grievance because of the time required to exhaust intra-union remedies would be a decision in the first instance for the company and ultimately for the arbitrator. Should the arbitrator find that "undue delay" was exercised by the union in filing the grievance and thus refused to hear the merits of the member's complaint, relief would still be available in the federal courts for a breach of the union's duty of fair representation. However, through the exhaustion of the union's intra-union remedies, the plaintiff may be able to resolve his dispute through mechanisms voluntarily and mutually established for resolution of disputes of this nature and resort to the federal courts could be avoided.

■ In the instant case, it is undisputed that plaintiff did not pursue his intra-union remedies. To justify his actions, plaintiff argues that the intra-union remedies available were not adequate. It is a common and well-accepted rule that exhaustion of intra-union remedies is not required if it would be futile in achieving the type of relief desired by the member. To this extent, however, an intra-union appeal process commencing at the local level, usually reviewed by the same person whose conduct is being challenged, does not in and of itself make the requirement of exhaustion futile. Appeal procedures of all sorts typically provide for an initial filing by the aggrieved person with the party against whom the complaint is made so that such party be given an opportunity to change his/her decision. Once the acting party has reviewed the appeal and has refused to alter the decision to the satisfaction of the appealing party, an appeal may then be filed with the International Union. The International Union makes a de novo decision whether the local union should have processed the grievance filed by its member and if so, can order the local union to so process the grievance.

The court further notes that the plaintiff's protestations that he was never informed of the union's appeal procedure is not persuasive. There is ample evidence in the record from the deposition of the business representative of the local union, Elton Schade, that the local union makes available to its members copies of the union's by-laws and constitution which contain the union's internal appeal procedures for complaints against the actions of local union officials. Although the plaintiff may not have been fully versed as to the technical procedures for filing an appeal under the union constitution, he was given the opportunity to inform himself of these procedures through the dissemination of the union constitution to its members. The mere fact that plaintiff did not avail himself of such information which was available does not excuse the requirement to exhaust union appeal procedures.

To the extent that plaintiff argues that the union owed him an affirmative duty to inform him of his intra-union appeal rights at the time it refused to process his grievance, the court finds that fulfillment of this duty by the union has not been considered a predicate to the requirement to exhaust intra-union remedies. Although there may be some merit to the plaintiff's argument for a creation of such a duty, especially in the context of union members who may not always be aware of the technical rigors of appeal procedures found in the union constitution, the creation of such a duty is clearly left for the appellate courts.

■ The court finds some merit to the argument that pursuing intra-union remedies would be futile since Section 20 was amended pursuant to a proposal submitted to the company by the union during collective bargaining negotiations; therefore, it was unlikely that pursuing the intra-union appeal procedure would result in a change from the initial refusal by the local union to process plaintiff's grievance. A union member should not be required to incur the expense and inconvenience of exhausting intra-union remedies where there is a de minimus likelihood of reversal of the local union's action or decision. Such a requirement would dictate that the union member pursue unproductive avenues for resolution of his dispute with the local union. In such circumstances, it is clear that the requirement of exhaustion of intra-union remedies are futile and thus not necessary. In the instant case, the court is not required to resolve this issue in light of the further disposition made of this case, *infra.*

Even assuming, however, that plaintiff is not required to exhaust intra-union remedies due to their futility, plaintiff must also establish that the union breached its duty of fair representation before the court reaches the merits of the plaintiff's claim. The leading case enumerating the legal standards applicable to a breach of the duty of fair representation is *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1966). In *Vaca* the Supreme Court held that:

A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. *Id.* at 190, 87 S.Ct. at 916.

Moreover, in applying this standard, the Court further noted:

> Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement. *Id.* at 191, 87 S.Ct. at 917.

In the instant case, the complaint does not allege bad faith, rather, the allegations in; the complaint claim that the union acted in "deliberate, willful and knowing violation of their duty to plaintiff union-member." Paragraph 24, Plaintiff's Complaint. In essence, plaintiff's claim as also found in paragraph 22 of the complaint is that the union breached its duty of fair representation because it failed and refused to process his grievance relative to benefits under Section 20, as amended. The issue before this court on these motions for summary judgment is whether these allegations, as a matter of law, in light of the undisputed facts before the court, constitute a breach of the union's duty of fair representation.

It should be noted at the outset that plaintiff stated in his deposition that he did not believe the union's decision or action resulted from a personal animosity towards plaintiff, but, rather, the union officials who refused to process his grievance were "just doing their job." Plaintiff's Deposition, page 24. In *Ruzicka v. General Motors*, 523 F.2d 306 (6th Cir. 1975), this circuit interpreted the standards set forth in *Vaca* and concluded bad faith is not required to prove claims of breach of a duty of unfair representation, but that such a breach may be established by showing arbitrary or discriminatory treatment even though not motivated by bad faith. The union in *Ruzicka* failed to timely file an appeal under the grievance procedure provided by the contract even though it had sought two extensions of time and no further extension was requested. The court concluded:

> Such negligent handling of the grievance, unrelated as it was to the merits of Appellant's case, amounts to unfair representation. It is a clear example of arbitrary and perfunctory handling of a grievance.

■ Two reasons make the *Ruzicka* holding inapplicable to the instant case. First, the negligence found in the handling of the grievance by the union was clearly something more than ordinary negligence and amounted to conduct more akin to gross negligence. The union did not merely make a negligent decision on the merits of the plaintiff's grievance in failing to file properly an appeal under the contract. Instead, the union acted arbitrarily and perfunctorily in failing to file a timely appeal irrespective of the grievance's merit. Where a union has arbitrarily and perfunctorily ignored a grievance without evaluating its possible merit, the law has always been that such conduct might establish a breach of the union's duty of fair representation. See *Vaca, supra*, 386 U.S. at 191, 87 S.Ct. 903, and *Giffin v. International Union of United Automobile Workers*, 469 F.2d 181, 183 (4th Cir. 1974). Thus, when the Sixth Circuit labeled such conduct as a form of negligence, it was not departing in substance from the standard typically applied to the duty of fair representation. In the instant case, the plaintiff has cited the court to no conduct which would be construed as grossly negligent. To the contrary, the plaintiff himself admitted that the union's decision to refuse to process his grievance amounted to nothing more than the performance of the duties and obligations of the union officials.

■ Second, in *Ruzicka*, the court found that the union officials had negligently failed to file a timely appeal unrelated to the merits of the plaintiff's case. The undisputed evidence before the court in this case is quite the opposite. There is no contention made by plaintiff that the union

did not review the merits of his grievance before denying to process it under the terms of the grievance-arbitration provisions of the contract. Rather, the plaintiff claims that the union acted deliberately, wilfully and knowingly. In response, the union concedes that it acted deliberately, willfully and knowingly, but that it did so on the basis of the belief that the employer was not violating the new contract, effective June 18, 1974, and thus plaintiff's grievance was not meritorious. Instead of aiding in the establishment of a breach of the duty of fair representation by the union, plaintiff's allegations that the union declined to process his grievance after knowing deliberation, under the standard laid down in *Ruzicka*, precludes a finding by this court that the union breached its duty of fair representation. The union reviewed the merits of plaintiff's grievance and concluded that it was not meritorious. If the union made a wrong decision, no duty could be said to have been breached under the standards established in either *Vaca* or *Ruzicka*. A union does not breach its duty of fair representation as a result of a decision not to process a grievance based on its merits, but a breach of the duty, under the *Vaca* and *Ruzicka* standards, exists only where such a refusal to process a grievance is made in an arbitrary and perfunctory manner irrespective of the merits of the grievance.

Thus, there is no substance to plaintiff's claim that the union breached its duty of fair representation in this case under either *Vaca* or the purportedly more liberal standard in *Ruzicka*. In light of the court's disposition of the issues of exhaustion of intra-union remedies and the union's breach of its duty of fair representation, it is unnecessary to further decide whether the benefits claimed under Section 20 of the old contract are vested rights which may not be bargained away by the union through negotiations with the employer. Consistent with the reasoning and conclusions set forth in this Opinion, Plaintiff's Motion for Summary Judgment is denied and Defendants' Motions for Summary Judgment are granted.