George E. DENT, Plaintiff,

v.

UNITED STATES POSTAL SERVICE,
et al., Defendants.

No. C–1–81–537.

United States District Court,
S. D. Ohio, W. D.

July 1, 1982.

Wanda Perkins Coats, Cincinnati, Ohio, for plaintiff.

Gary Moore Eby, Elizabeth Gere Whitaker, Asst. U. S. Atty., Cincinnati, Ohio, for defendants.

SPIEGEL, District Judge.

This case is before the Court upon the motion for summary judgment filed by defendants American Postal Workers Union, John Panzeca, and Matthew L. Davis (doc. 16). Plaintiff has filed a "motion in opposition" (doc. 19) and an amended memorandum in opposition (doc. 20). The above named defendants have also filed a memorandum in reply (doc. 22).

Plaintiff is a former employee of the defendant United States Postal Service. While so employed, the defendant American Postal Workers Union acted as plaintiff's collective bargaining representative. Defendant Panzeca was, at all times relevant to the instant case, President of the Union Local. Defendant Davis, at all times relevant to the instant case, was a Union representative.

This lawsuit involves a series of events covering a period of one and a half years which culminated in plaintiff's discharge from the defendant Postal Service. For the purpose of clarity, we believe that a brief recitation of the operative facts is appropriate.

On January 3, 1978 the defendant Postal Service sent plaintiff a notice of proposed discharge. The Postal Service stated that the grounds for discharge were plaintiff's habitual absenteeism. Two weeks later, plaintiff received final notice of termination effective February 3, 1978.

On January 24, 1978, the Union steward filed a grievance on plaintiff's behalf. Before the grievance was presented for the final and binding arbitration set for October 10, 1978, the parties settled the grievance. Under the terms of the settlement,

the Postal Service agreed to give plaintiff first consideration for reinstatement to a custodian position after September 1, 1979. In exchange, plaintiff agreed to apply for reinstatement at some point in time between September 1, 1979 and December 31, 1979 and to provide the Postal Service with evidence that he remained sober for one year.

On December 27, 1979, four days prior to the expiration of the reinstatement request period, plaintiff contacted defendant Panzeca about returning to work in accordance with the settlement agreement. In an affidavit attached to the motion here under consideration, defendant Panzeca outlined the steps undertaken to assist plaintiff in preparing the evidentiary presentation of sobriety. Plaintiff readily admits that defendant was helpful in securing the evidence and drafting a reinstatement request. Both the evidence and request were delivered timely to Richard Joesting, Manager of Employee Relations for the defendant Postal Service.

During the first week of February, 1980, plaintiff received a letter indicating that the defendant Postal Service denied the reinstatement request. Upon learning of the unsuccessful reinstatement attempt, defendant Panzeca conferred with plaintiff. The following is plaintiff's account of this meeting.

Q. Did you think that you had any further remedies through the postal workers union?

A. I figure the union could have gone on and got the job back instead of just saying, "This is all I can do for you."

Q. Who told you that?

A. Jack said he couldn't do no more, he done all he could do.

Q. Is that Mr. Panzeca?

A. Jack Panzeca. I throwed up my hands, "you are the ones supposed to get my job back for me, and you didn't fight it hard enough."

Plaintiff's Deposition at 74.

Plaintiff contends that he was under the impression that his original grievance, filed in January of 1978, was still open and effective to protest the reinstatement decision. Plaintiff further maintains that the Union never gave notice that the contract required the filing of a new grievance to challenge the reinstatement decision.

Defendant Panzeca's account of this conversation does not differ significantly from plaintiff's. In essence, defendant Panzeca maintains that plaintiff did not request the Union to file a grievance on his behalf.

Neither party contests the proposition that the collective bargaining agreement required the plaintiff to ask the union to initiate a grievance over the reinstatement decision. The parties further agree that plaintiff failed to make the necessary request.

It is a settled point of law that an employee must exhaust available contractual grievance procedures prior to filing suit under § 301 of the LMRA. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). The Supreme Court believed that the exhaustion requirement is necessary to promote several established policies of federal labor law. Among these are protecting the employer's interest in limiting the aggrieved employee's choice of remedies, protecting the joint union-employer interest in a uniform and exclusive method of dispute settlement needed for consistent administration of the collective bargaining agreement, and, affording the Union an opportunity to act on behalf of aggrieved employee. The most fundamental interest served by the exhaustion policy, however, is the Congressional policy favoring private resolution of labor disputes. *See United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

Because plaintiff failed to request that the Union file a grievance on his behalf, he cannot maintain a suit against the employer

and Union under § 301 unless plaintiff can establish a recognized exception to the *Maddox* exhaustion requirement. One recognized exception provides that the Court should excuse an employee's failure to exhaust grievance procedures provided by the collective bargaining agreement if the Union's breach of the duty of fair representation caused the failure. *Vaca v. Sipes,* 386 U.S. 171, 185–86, 87 S.Ct. 903, 914–15, 17 L.Ed.2d 842 (1967).

The issue presented by the motion for summary judgment is whether the pleadings, affidavits, and depositions present a genuine issue of material fact as to whether the Union breached the duty of fair representation by not advising the plaintiff to file a new grievance over the Postal Service's reinstatement decision. In making this determination, the Court is required to consider the evidence and all the inferences in a light most favorable to plaintiff. Fed. R.Civ.P. 56(c); *Smith v. Hudson,* 600 F.2d 60 (6th Cir.) *cert. dismissed* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979); *Watkins v. Northwestern Ohio Tractor Pullers Association, Inc.,* 630 F.2d 1155 (6th Cir. 1980).

The defendant American Postal Workers Union argues that the law does not impose an affirmative duty on the Union to inform employees of both the availability and operation of grievance procedures. The defendant Union maintains that an employee's ignorance of grievance procedures is an invalid excuse for his failure to resort to them. In support of this proposition, the defendant Union relies on an array of reported cases, *e.g. Fristoe v. Reynolds Metal Co.,* 615 F.2d 1209 (9th Cir. 1980); *Battle v. Clark Equipment Co.,* 579 F.2d 1338 (7th Cir. 1978); *Newgent v. Modine Manufacturing Co.,* 495 F.2d 919 (7th Cir. 1974); *Dezura v. Firestone Tire & Rubber Co.,* 470 F.Supp. 121 (E.D.Pa.1979); *Savel v. Detroit News,* 435 F.Supp. 329, 332 (E.D.Mich.1977).

After reviewing these and other cases cited by the defendant Union, we believe that we are now presented with a factually distinct situation which merits a different analytical approach. Each of the cases cited by the defendant involves the failure of an aggrieved employee to exhaust intraunion grievance procedures. These courts held that an employee's ignorance of available intraunion grievance procedures was not a justifiable excuse for the failure to exhaust them because an employee undertakes the duty to become aware of the nature and availability of union remedies when becoming a member of the Union. The employee knowingly and voluntarily subjects himself to such procedures upon joining the rank and file. In essence, the rights and duties associated with union membership are personal in nature. This accounts for the virtual blanket application of the proposition that an employee's ignorance of his union's procedures will not excuse his failure to exhaust. For example, in *Newgent v. Modine Manufacturing Co.,* an employee failed to exhaust internal union remedies after relying on the erroneous advice of a union official. In upholding the grant of summary judgment in favor of the union, the court stated that the employee was not "justified in remaining in ignorance of the provisions governing his own union or, in fact, of relying on a statement by an officer that there was nothing he could do." 495 F.2d 919, 928 (7th Cir. 1974).

■ We believe that the blanket approach rejecting ignorance as a valid excuse is not appropriate in cases where the employee failed to exhaust available contractual procedures. The contractual grievance procedures are negotiated and administered by the union on the employee's behalf. Because the employee is so removed from the creation and administration of the grievance procedures, employees usually "do not have the expertise, knowledge or experience to interpret the complicated substantive and procedural provisions of a collective bargaining agreement." *Schum v. South Buffalo Railway Co.,* 496 F.2d 328, 331 (2d Cir. 1974). Indeed, while the applicability of intraunion procedures is an incident of union membership, the employee is subject to the contract grievance procedures due to his mere presence in the bargaining unit. Thus, when an employee de-

cides upon union membership and thereby subjects himself to the constitution and by-laws of the organization, there is an element of volition and presumption of awareness implicit in that choice which is absent when an employee becomes subject to the provisions of a collective bargaining agreement. For these reasons, we conclude that in the appropriate circumstances an employee's ignorance of the nature and applicability of contractual grievance provisions can be excused when the union fails accurately to advise the employee of the proper procedures.

We believe this result is consistent with the Supreme Court's discussion of exceptions to the exhaustion requirement in *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). In *Vaca*, the Court was faced with a union's failure to invoke a secondary stage of the contractual grievance procedure. Although the employee failed to exhaust the available contractual grievance procedure, the Court held that a § 301 suit was maintainable if the employee could establish that the union had the sole power to invoke the procedure and that the union had breached the duty of fair representation in not invoking the particular procedure. *Id.* at 185, 87 S.Ct. at 914.

It is not clear from the record before us whether the Union has the sole power to invoke the grievance process. It is clear that the employee has the power to *initiate* the process by requesting that a grievance be filed. We must assume, however, for the purposes of summary judgment that once an employee makes such a request the defendant union has the discretion to decide whether to invoke the contractual process by actually filing the grievance. Thus, consistent with the exception detailed in *Vaca*, if the failure of the defendant union to invoke the grievance process was caused by the defendant Union's unfair representation in not advising plaintiff that a new grievance had to be filed, then the present action is not barred by the exhaustion requirement.

The issue present in the case at bar is similar to the one confronted by the Ninth Circuit in *Retana v. Apartment, Motel, Hotel, and Elevator Operators Union*, 453 F.2d 1018 (9th Cir. 1972). In *Retana*, the plaintiff failed to request that her union file a grievance on her behalf. The Court held that this failure to exhaust contractual remedies could be excused if the plaintiff could prove her allegations that the union's failure to advise and inform her of the grievance process was arbitrary, discriminatory, or in bad faith. *Id.* at 1025.

We cannot conclude in the instant action that no genuine issue of material fact exists as to whether the defendant Union's failure to advise plaintiff was arbitrary, discriminatory, or in bad faith. In reaching this conclusion, we must emphasize that Fed.R. Civ.P. 56 requires that the depositions, pleadings, and affidavits must be construed in plaintiff's favor. Although the defendant Union has cited uncontradicted evidence of defendant Panzeca's assistance in preparing the reinstatement request, and such evidence is certainly probative of good faith, we are forced to conclude that the evidentiary presentation is insufficient to warrant summary judgment.

Our primary reason for denying the motion concerns plaintiff's account of his meeting with defendant Panzeca shortly after the Postal Service denied the reinstatement request. Plaintiff contends that defendant Panzeca advised "this is all I can do for you." We cannot unequivocally state that defendant Panzeca did not so advise in order to intentionally deceive the plaintiff about the need to file a new grievance. Without convincing evidence to the contrary, plaintiff's account of the conversation can create an inference of bad faith which is sufficient to avoid summary judgment. Moreover, it is generally accepted that in cases such as the one at bar, where a party's subjective state of mind is in issue, summary judgment is inappropriate. *New Jersey Life Insurance Co. v. Getz*, 622 F.2d 198 (6th Cir. 1980); *Schmidt v. McKay*, 555 F.2d 30 (2d Cir. 1977). Accordingly, the motion of the defendants Panzeca, Davis and the Postal Workers Union is denied.

SO ORDERED.