Richard KASCHAK, Plaintiff-Appellant,

v.

CONSOLIDATED RAIL CORPORATION,
Defendant-Appellee.

No. 81–3383.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 6, 1982.

Decided May 26, 1983.

Rehearing and Rehearing En Banc
Denied July 22, 1983.

Dennis Haines, Barry Laine (argued), Youngstown, Ohio, for plaintiff-appellant.

Thomas R. Skulina, Cleveland, Ohio, Dennis A. Arouca (argued), David S. Fortney, Philadelphia, Pa., for defendant-appellee.

Before EDWARDS, Chief Judge, JONES, Circuit Judge, and CELEBREZZE, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Plaintiff-appellant, Richard Kaschak, appeals from an order of the district court dismissing the complaint against his employer, Consolidated Rail Corporation (Conrail) for lack of subject matter jurisdiction. The district court found that the National Railroad Adjustment Board (the Board) had exclusive jurisdiction over the dispute which gave rise to this action and, thus, that Kaschak's resort to the federal courts was improper. We find that, although the resolution of minor disputes generally lies within the exclusive jurisdiction of the Board, the allegations in the instant complaint, if true, are sufficient to place this particular dispute within the bounds of federal jurisdiction.

Accordingly, we find it necessary to remand this cause to the district court for further proceedings not inconsistent with this opinion. The district court must determine whether the appellant's failure to resort to the Board occurred through no fault of his own *and* despite every good faith effort to first invoke all contractual and administrative remedies. If that court finds that Kaschak was relying upon his union to process his grievance, that such reliance was reasonable in the circumstances and that it was that reliance which caused his failure to personally present his claim to the Board, the action against Conrail would then be properly cognizable in federal court.

## I

The appellant filed this action against Conrail in the United States District Court for the Northern District of Ohio, Eastern Division. Appellant's complaint indicates that he was employed by Conrail for some time. He claims that he was wrongfully discharged in July or August 1977 and that that discharge denied him certain employment rights and benefits, all in violation of the applicable bargaining agreement.

The United Transportation Union Local 1724 (the Union) was the appellant's collective bargaining representative. The appellant contends that he filed a timely request for grievance procedures in connection with his discharge, but that the Union failed to process that grievance in accordance with the time requirements of the bargaining agreement. The appellant asserts that, as a result of the Union's breach of the duty of fair representation, he lost the right to have his grievance processed before the Board.

Despite the charges of impropriety against both the Union and Conrail, this action was filed solely against Conrail for its alleged violation of the bargaining agreement. Conrail filed a motion to dismiss the complaint for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). The district court declined to hear oral argument and, after consideration of the supporting papers, denied the motion. The court held that the Railway Labor Act (RLA) requirement that aggrieved employees resort to the Board for the resolution of their grievances, rather than the federal courts, is subject to certain exceptions. The court then noted that one such exception exists when an employee relies upon his union to prosecute his grievance and the union breaches its duty relating thereto.

Conrail filed a motion to reconsider the denial, primarily premised upon certain recent decisions of this Court.[1] The district court then concluded that, even in the face of allegations of unfair representation on the part of the Union, the Board's jurisdiction remains exclusive. Accordingly, the motion to dismiss was granted by the trial judge. We disagree and find that the dismissal pursuant to Rule 12(b)(1) was inappropriate.[2]

## II

Conrail is a rail carrier within the meaning of the RLA, 45 U.S.C. § 151, *et seq.*[3] The employer-employee relationship in this case is thus necessarily governed by the provisions of that Act.

The RLA provides a framework for the settlement of disputes between an employee and a carrier which arise out of the interpretation or application of the collective bargaining agreement, commonly referred to as "minor disputes." Section 2 of the RLA, 45 U.S.C. § 152, dictates a preference for the settlement of such disputes in accordance with the contractually agreed-upon grievance procedures.[4] If, however, the grievance cannot be so resolved, § 3, 45 U.S.C. § 153, specifically provides an alternate mechanism for doing so. 45 U.S.C. § 153 First, (i) provides:

---

1. *McKinney v. International Association of Machinists*, 624 F.2d 745 (6th Cir.1980) and *Davis v. River Terminal Railway Co.*, 652 F.2d 57 (6th Cir.1981), reh. denied (April 17, 1981).

2. We only disagree with the trial judge to the extent that he felt compelled to retreat from his original position. The initial memorandum and order denying the motion to dismiss carefully considered the arguments now before this Court. We simply find that there was no reason, upon reconsideration, for the district court order to be changed.

3. "Carrier" is defined, in pertinent part, as follows:

Section 151. Definitions.
When used in this chapter and section 225 of Title 28 and for the purposes of said chapter and section—
FIRST—The term "carrier" includes any express company, sleeping-car company, carrier by railroad, subject to the Interstate Commerce Act, and any company which is directly or indirectly owned or controlled by or under common control with any carrier by railroad and which operates any equipment or facilities or performs any service (other than trucking service) in connection with the transportation receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, and handling of property transported by railroad, and any receiver, trustee or other individual or body, judicial or otherwise, when in the possession of the business of any such "carrier" . . . .

It is undisputed that Conrail fits squarely within the term "carrier" as it is defined in the RLA.

4. 45 U.S.C. Section 152 begins as follows:

Section 152. General Duties—Duty of Carriers and Employees to Settle Disputes.
FIRST. It shall be the duty of all carriers, their officers, agents and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.
Consideration of disputes by representatives
SECOND. All disputes between a carrier or carriers and its or their employees shall be considered, and, if possible, decided, with all expedition, in conference between representatives designated and authorized so to confer, respectively, by the carrier or carriers and by the employees thereof interested in the dispute.

The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on the date of approval of this Act, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the dispute may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.

The Supreme Court and this Circuit have interpreted this section as placing exclusive jurisdiction over minor dispute resolution in the hands of the Board. *See Andrews v. Louisville & Nashville Railroad,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972); *McKinney v. International Association of Machinists,* 624 F.2d 745 (6th Cir.1980); *Local 1477, United Transportation Union v. Baker,* 482 F.2d 228 (6th Cir.1973). Accordingly, an employee may not forego resort to the Board and opt to have a dispute with a carrier considered, in the first instance, by a federal court. Where such a choice is made, a motion to dismiss pursuant to 12(b)(1) must be sustained. *See e.g. McKinney v. International Association of Machinists, supra.*

■ Any controversy over the meaning of a collective bargaining agreement in a particular fact situation will be deemed a "minor dispute" for purposes of RLA dispute resolution. *Id.* The appellant specifically claims that his discharge was in violation of the collective bargaining agreement, placing an interpretation of that agreement at the heart of his complaint. The fact that he characterizes the claim as one for "wrongful discharge" does not alter its status as a minor dispute. *Andrews v. Louisville & Nashville Railroad, supra.* It appears, initially, that Kaschak's claim is necessarily subject to the requirement of submission to Board review.

### III

■ While the appellant concedes that the above-stated principles regarding RLA dispute resolution generally hold true, he claims that the facts enumerated in his complaint fall outside the Board's jurisdiction over minor disputes. Kaschak contends that the allegations of unfair representation by the Union take his case out of that portion of the statutory scheme which commands resort to the Board. He argues that since he attempted to, but was foreclosed from, resort to the procedures contemplated by Sections 2 and 3 of the RLA, he may now maintain a legal action against Conrail for his wrongful discharge.

The appellant largely bases his argument upon *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), and its progeny. There, in an action under the Labor Management Relations Act (LMRA), 29 U.S.C. § 141, *et seq.,* the Supreme Court established the rule that:

> . . . the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, *provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance.*

386 U.S. at 185, 186, 87 S.Ct. at 914 (emphasis added). The appellant contends that this principle can, and should be, extended to actions under the RLA. Conrail disagrees.

Conrail contends that the *Vaca* line of cases, and the principle they establish, are inapplicable in the RLA context. Conrail points out that the LMRA and the RLA are distinct statutory schemes, with those covered by the latter being explicitly exempted from the provisions of the LMRA. More specifically, Conrail notes (1) that § 301 of the LMRA explicitly creates a federal cause of action for employer-employee disputes, while the RLA contains no such provision, (2) the National Labor Relations Board is a body available for *voluntary* resort to arbi-

tration (thereby waiving the right to first invoke § 301) while the National Railroad Adjustment Board is a statutorily-created arbitration forum, and (3) unlike the LMRA, the RLA permits a grievant to personally seek redress through that arbitration process. It is Conrail's position that to allow Kaschak to pursue his grievance in court would be to impermissibly extend federal jurisdiction, to ignore the mandatory grievance features of the RLA and to blur the difference between the Acts.

The argument that a federal cause of action must be explicit within the four corners of the RLA before federal courts may resolve disputes arising thereunder is without merit. The Supreme Court has repeatedly addressed the issue and determined that the provisions of the RLA are more than mere exhortations to the parties, creating legal obligations enforceable by whatever means appropriate. *See Chicago & N.W.R. Co. v. Transportation Union*, 402 U.S. 570, 577, 91 S.Ct. 1731, 1735, 29 L.Ed.2d 187 (1970); *Brotherhood of Railroad Trainmen v. Howard*, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952); *Virginian R. Co. v. System Federation No. 40*, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937); *Texas & N.O.R. Co. v. Brotherhood of Railway Clerks*, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034 (1930). *See also Summit Airlines v. Teamsters Local Union No. 295*, 628 F.2d 787, 789–90 (2d Cir.1980). The unique history behind the RLA supports this conclusion. Though formulated as a piece of federal legislation, "it was, and was acknowledged to be, an agreement worked out between management and labor, and ratified by the Congress and the President." *Chicago & N.W.R. Co. v. Transportation Union*, 402 U.S. at 576, 91 S.Ct. at 1735. *See also International Association of Machinists v. Street*, 367 U.S. 740, 758, 81 S.Ct. 1784, 1794, 6 L.Ed.2d 1141 (1961). The provisions of the RLA are, thus, enforceable as quasi-

contractual obligations, even absent a § 301-like provision saying so.

The question remaining is which are the appropriate means for the enforcement of the obligations which have been created between Conrail, the Union and Kaschak. Generally, the propriety of the means of enforcement is to be determined on a case-by-case basis. *Chicago & N.W.R. Co. v. Transportation Union*, 402 U.S. at 577, 91 S.Ct. at 1735. Conrail contends that the presence of the statutory mechanism for dispute resolution is determinative in this case, however. It is their position that whenever a "minor dispute" is involved, Board review is conclusively the appropriate method of enforcement. This reads the requirement of resort to the Board too broadly.

While the jurisdiction of the Board has been carefully guarded and deemed exclusive "in at least some situations," *Andrews v. Louisville & Nashville R. Co.*, 406 U.S. at 325, 92 S.Ct. at 1570, it is clearly not mandatory for *all* RLA employer-employee disputes involving an interpretation of the collective bargaining agreement. The Supreme Court has specifically recognized exceptions to the requirement that an employee personally present his claim to the Board where that requirement would prevent the fashioning of an adequate remedy for the aggrieved employee. *See Czosek v. O'Mara*, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970); *Glover v. St. Louis-San Francisco Railway Co.*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969); *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Steele v. Louisville & Nashville Railroad Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944).[5]

In each of these cases, the Court was concerned with preserving the purposes behind the formation of the Act, and behind

---

5. Conrail contends that this line of cases is distinguishable and that jurisdiction over the employer is only available where the employee has alleged that the union and the carrier have acted *in concert* to deny him his employment and representation rights. The Supreme Court specifically reserved this issue in *Czosek*, not-

ing that a decision on it was not necessary to its present holding. We, however, do not read the language of the various cited cases as narrowly as does Conrail. Nothing in the Court's discussions intimates that the holdings are to be so limited.

the establishment of the Board arbitration mechanism itself. Among the general purposes enumerated in the RLA are the avoidance of any interference with or interruption of commerce, the preservation of the employees' right to organize and the promotion of prompt and orderly settlements of all disputes among the parties. 45 U.S.C. § 151a. Additionally, one of the fundamental themes underlying the RLA and *all* federal labor policies is the importance of compensating the individual employee for injuries caused by a violation of his or her rights. *International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42 at 49, 99 S.Ct. 2121 at 2126, 60 L.Ed.2d 698. *See also Bowen v. United States Postal Service,* —— U.S. ——, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983).

It was in an effort to best advance these interacting policies that the dispute resolution mechanism of the RLA was established. Congress recognized the potential for the disruption of transportation, and hence, of commerce, where carriers and their employees are unable to settle grievances.[6] The likely sympathy for the uncompensated individual grievant was viewed as a very real threat to the efficiency of this important industry. The RLA arbitration scheme was created, therefore, to provide a framework for the peaceful settlement of these disputes.[7] Where that statutory scheme itself effectively *prevents* any set-

tlement of a dispute, it is clearly not fulfilling the purpose of making the employee whole, nor is it protecting against the disruption of commerce which Congress feared. In such cases, unquestioned resort to Board review frustrates the very reason for its being.[8] Obviously, this could not have been the result intended.

Rather, it appears that there were certain factual scenarios surrounding employer-employee disputes which were not contemplated when the statutory scheme was formulated. For instance, in *Glover v. St. Louis-San Francisco R. Co., supra,* the Court explicitly recognized an exception to the exhaustion of administrative remedies requirement when the effort to proceed with those remedies would be wholly futile. 393 U.S. at 330, 89 S.Ct. at 551. In such situations it is clear that the statutorily-created arbitration scheme is simply insufficient to accomplish the very ends it was designed to further.

Were Kaschak to have personally presented his grievance to the Board at the time this action was filed, his efforts would have been futile: The Board would have been free to refuse to hear Kaschak's claim as untimely, and this Court would be powerless to review a dismissal on those grounds. *Union Pacific Railroad v. Sheehan,* 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978).[9]

**6.** *See* H.R.Rep. No. 328, 69th Cong. 1st Sess. p. 1. *See also Union Pacific R.R. Co. v. Price,* 360 U.S. 601, 609, 79 S.Ct. 1351, 1355, 3 L.Ed.2d 1460 (1959); *Pratt v. United Air Lines, Inc.,* 468 F.Supp. 508 (N.D.Cal.1978).

**7.** *Id.*

**8.** The *Foust* court particularly discussed prior decisions allowing resort to a judicial forum where the existence of a remedy depended upon such a result:

> In approving "resort to the *usual* judicial remedies of injunction and award of damages when appropriate," *Steele v. Louisville & Nashville R. Co.,* 323 U.S. [192] at 207 [65 S.Ct. 226 at 234, 89 L.Ed. 173] (emphasis added), the Court emphasized that relief in each case should be fashioned to make the injured employee whole. *Id.* at 206–07 [65 S.Ct. at 233–234]. This compensation principle was again invoked in *Vaca v. Sipes,* su-

pra, to govern an unfair representation suit for compensatory damages based on a union's refusal to process a grievance alleging wrongful discharge. The Court there rejected the contention that an order compelling arbitration was the employee's only remedy, and concluded that damages and equitable relief could be awarded when necessary to ensure full compensation. 386 U.S. at 196 [87 S.Ct. at 919].

**9.** In *Sheehan,* the plaintiff had *opted* to pursue his complaint against the employer in state court. The state court dismissed the claim, relying on *Andrews.* Only *then* did the employee seek Board resolution of his dispute. The Board refused to consider the dispute, however, finding that it had become time barred while awaiting disposition by the state courts. In considering the extent to which that decision was reviewable, the Supreme Court dealt with the issue as follows:

While there is no doubt that an employee may not opt to have his minor dispute resolved before a court rather than before the Board,[10] that is *not* the situation which Kaschak's claim presents to this Court. Kaschak contends that he never had the chance to choose between the Board and the district court. Rather, he claims that he requested the Union to present his grievance to the Board and that the time for individual resort to the Board passed while he was relying on the Union to represent him. The only "choice" Kaschak claims to have made was for a collective rather than an individual presentation of his claim.

Kaschak's counsel stated during oral argument that Kaschak had made a good faith attempt to invoke all contractual and administrative grievance procedures and that it was his reliance on the Union which alone resulted in his loss of the ability to resort to the Board. Taking all Kaschak's allegations as true, as we must in the context of a 12(b)(1) motion,[11] it appears that his claim does fall outside the normal statutory scheme and that relegating him *solely* to a Board-administered remedy would only serve to undermine the compensatory prin-

ciple underlying not only the RLA dispute resolution mechanism, but all labor relations schemes.[12]

Since the facts before us are distinguishable from those which would give rise to exclusive Board jurisdiction, and are, in fact, incapable of proper resolution in that forum, it is clear that resort to the Board is *not* the appropriate mechanism for the enforcement of Conrail's legal obligations in this context. We now must determine whether the obligation is one which is properly enforceable by the judiciary. The factors to be considered in this determination were delineated by the Supreme Court in *Chicago & N.W.R. Co. v. Transportation Union, supra:*

> Given that § 2 First imposes a legal obligation on the parties, the question remains whether it is an obligation enforceable by the judiciary. We have often been confronted with similar questions in connection with other duties under the Railway Labor Act. Our cases reveal that where the statutory language and legislative history are unclear, the propriety of judicial enforcement turns on the

---

Judicial review of Adjustment Board orders is limited to three specific grounds: (1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption. · 45 U.S.C. Section 153 First (q). Only upon one or more of these bases may a court ·set aside an order of the Adjustment Board .... and the Adjustment Board certainly was acting within its jurisdiction and in conformity with the requirements of the Act by determining the question of whether the time limitation of the governing collective-bargaining agreement was tolled by the filing of respondent's state-court action. Respondent does not contend otherwise. Accordingly, we agree with the district court that respondent simply failed to demonstrate the existence of any of the grounds for review set forth in Section 153 First (q).

**10.** *See Andrews v. Louisville & Nashville R. Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972); *McKinney v. International Ass'n. of Machinists, etc.,* 624 F.2d 745 (6th Cir.1980).

**11.** *See Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Gibbs v.*

*Buck,* 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939).

**12.** In *Foust,* an action brought under the RLA, the Court discussed at length the importance of compensating the individual employee in order to preserve the smooth operation of the overall labor relations scheme. Significantly, the Court noted:

> The compensation principle is also reflected in *Vaca's* refusal to hold unfair representation claims within the exclusive jurisdiction of the National Labor Relations Board. Because the "public interest in effecting the policies of the federal labor laws, not the wrong done the individual employee, is always the Board's principal concern in fashioning unfair labor practice remedies," *we feared that the denial ·of a judicial forum might "frustrate the basic purposes underlying the duty of fair representation." Vaca v. Sipes,* supra [386 U.S.] at 182 n. 8, 183 [87 S.Ct. at 913 n. 8, 913]. See also *Glover v. St. Louis-San Francisco R. Co.,* 393 U.S. 324, 328–329 [89 S.Ct. 548, 550–551, 21 L.Ed.2d 519] (1969).

442 U.S. at 49 n. 12, 99 S.Ct. at 2126 n. 12 (emphasis added).

importance of the duty in the scheme of the Act, the capacity of the courts to enforce it effectively, and the necessity for judicial enforcement if the right of the aggrieved party is not to prove illusory.

402 U.S. at 578, 91 S.Ct. at 1736. We are convinced that each of these factors is satisfied in cases such as that before us, and that judicial resolution is therefore particularly appropriate.[13]

The employer's duty to act in accordance with the terms of the collective bargaining agreement lies at the very heart of the statutory scheme. Absent such a duty, the Act's provisions would be virtually unenforceable, making the entire collective bargaining process no more than a series of meaningless exercises. Moreover, closely connected to the employer's obligation to the employee, and "*[o]f paramount importance,* is the right of the employee, who has been injured by both the employer's and the union's breach, to be made whole." *Bowen*

v. *United States Postal Service,* ——— U.S. at ———, 103 S.Ct. at 595.

The capacity of the courts to enforce this obligation is unquestionable. Section 301 of the Labor Management Relations Act specifically requires federal courts to resolve disputes arising between noncarrier employers and their employees. There is no reason to believe that federal courts are any less capable of making the same determinations in the one context than they are in the other. *Accord Chicago & N.W.R. Co. v. Transportation Union,* 402 U.S. at 579, 91 S.Ct. at 1736.

Finally, the rights of employees under the RLA may very well prove illusory were we to reach a different result here. To limit an employee's right to dispute resolution to those terms and time limits expressed in the collective bargaining agreement may very well be to grant him or her no individual right at all. The RLA contemplates the presence of three entities: the employer, the individual employee and the union (as

---

**13.** In *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1974), the Supreme Court detailed a number of factors to be considered in determining whether a remedy not expressly provided in a statute can be deemed implicit therein. These include: (1) whether the statute creates a federal right *in favor* of the plaintiff; (2) whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; (3) whether it is consistent with the underlying scheme to imply such a remedy; and (4) whether the cause of action is one traditionally left to state law so that an implied cause of action based on federal law would be inappropriate. The Court has recently reaffirmed the practice of implying a remedy under the *Cort* analysis where appropriate. *Merrill, Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982). In *Merrill, Lynch,* the Court reemphasized the importance of looking to congressional intent via an examination of "Congress' perception of the law it was shaping and reshaping." 456 U.S. at 378, 102 S.Ct. at 1839.

We have no doubt that, were we relegated to an analysis of whether a remedy under the RLA could be implied in favor of the appellant and those similarly situated, we would find such a remedy in the case before us. As discussed in the body of this opinion, the congressional desire to compensate injured employees and to protect commerce from needless disruption growing out of labor disputes virtually commands a remedy for individual employees

in the limited situation we have defined. The formulation of the RLA and of all labor schemes has occurred with these ends constantly in mind. These facts satisfy the considerations relevant to the *Cort* analysis as readily as they justify the result we reach through an application of *Chicago & N.W. R. Co. v. Transportation Union.*

We do not feel, however, that a remedy need be implied in this case; the unique nature of the RLA relieves us from having to go that far. As noted, the RLA is quasi-contractual in nature, creating legally enforceable obligations enforceable by whatever means appropriate. Our inquiry regarding Board jurisdiction only requires that we ask to what extent the statute itself has defined the appropriate means for enforcing a limited class of these obligations. The only question under the RLA is *where* an existing remedy may be enforced.

*Merrill, Lynch* does not require a contrary result. First, to the extent that it defines a new, more exacting test for determining when a nonexpress remedy exists, it does so with reference to modern, detailed legislation—specifically distinguishing its prior cases dealing with older broad statutory schemes, such as the RLA, which, by their nature, left the determination of the appropriate enforcement methods to the federal courts. Second, as noted, even if *Merrill, Lynch* were to command a different analysis, the result in this case would be the same, only the semantics would change.

representative of the collective employees). The rights of the individual employee as against the employer are not coextensive with those of the union; each party under the statute maintains a distinct right to enforce the obligations of the other two. Absent separate enforcement rights exercisable by the individual employee, there would be no check on possible collusion between the employer and the union to the detriment of some or all of the individuals. *See e.g. Steele v. Louisville & Nashville R. Co., supra.* In addition, the terms of collective bargaining agreements have been the subject of negotiation between the union and the employer, with the employee generally removed from their formulation and administration. Often, an employee will not have the knowledge or expertise necessary to interpret or comply with the substantive and procedural requirements of such contracts. *See Schum v. So. Buffalo Railway Co.,* 496 F.2d 328, 331 (2d Cir.1974); *Dent v. United States Postal Service,* 542 F.Supp. 834, 836 (S.D.Ohio, 1982). Where the employee's failure to personally resort to the Board arises *solely* out of reliance on the union's expertise and is a function of his or her own lack of the same, failure to afford the employee a judicial remedy is tantamount to a denial of the right to be a party to a legally enforceable collective bargaining agreement. We cannot countenance such a result.

In addition to our finding that federal jurisdiction over such disputes can be grounded in the RLA itself, we are unpersuaded that an analogy to the result in *Vaca v. Sipes, supra,* is inappropriate. While the Supreme Court has warned against the wholesale importation of the provisions of the LMRA into the RLA, *see Brotherhood of R.R. Trainmen v. Jacksonville Terminal Co.,* 394 U.S. 369, 383–84, 395, 89 S.Ct. 1109, 1117–1118, 1124, 22 L.Ed.2d 344 (1969); *Railroad Trainmen v.*

*Chicago River & I.R. Co.,* 353 U.S. 30, 31 n. 2, 77 S.Ct. 635, 636 n. 2, 1 L.Ed.2d 622 (1957), and this Court has similarly refused to draw blanket analogies between the two Acts, *see Brotherhood of Locomotive Firemen and Enginemen v. United Transportation Union,* 471 F.2d 8, 9 (6th Cir.1972), the Supreme Court has often looked to the LMRA and the National Labor Relations Act (NLRA) in construing or interpreting the RLA. *See Brotherhood of R.R. Trainmen v. Jacksonville Terminal Co., supra; Steele v. Louisville & Nashville R. Co.,* 323 U.S. 192, 200–201, 65 S.Ct. 226, 231, 89 L.Ed. 173 (1944); *Railroad Trainmen v. Toledo, P. & W.R. Co.,* 321 U.S. 50, 61 n. 18, 64 S.Ct. 413, 419 n. 18, 88 L.Ed. 534 (1944). *Cf. Duggan v. International Association of Machinists,* 510 F.2d 1086, 1087–88 (9th Cir. 1975). This is particularly true where the general principles to be considered are capable of consistent application. The importance of the compensation principle underlies all federal labor relations schemes and has been often discussed and applied in the context of both the LMRA and the RLA. *Compare Bowen v. United States Postal Service, supra* and *International Brotherhood of Electrical Workers v. Foust, supra.*

In fact, though not applying *Vaca v. Sipes* on all fours to the facts before it, the Supreme Court has specifically discussed the case and its rationale in support of decisions granting carrier employees access to the jurisdiction of the federal courts. *See e.g. International Brotherhood of Electrical Workers v. Foust, supra; Glover v. St. Louis-San Francisco R. Co., supra.*

Accordingly, we reject the appellee's implication that this Court should ignore the teaching and result in *Vaca v. Sipes* merely because, on its facts, it dealt with an employer-employee relationship under the LMRA.[14]

---

14. We find any attempt to draw a bright line distinction between the two Acts particularly troubling in light of the fact that to the extent that a federal common law exists, it exists in the area of labor policy. *Bowen v. United States Postal Service,* —— U.S. at ——, 103 S.Ct. at 592. Thus, where appropriate, labor issues may be properly resolved by going beyond the four corners of any applicable statutory scheme. Moreover, to the extent that a corpus of national labor policy exists, we are to look for it first in the law developed during the administration and interpretation of the National Labor Relations Act. *Brotherhood of*

## IV

We recognize that the circuits are apparently not in agreement on the issue we address today.[15] The Fourth Circuit has held that the Board's jurisdiction over minor disputes is always exclusive, with no possible exception. That court has chosen to read the "exclusive jurisdiction" language in *Andrews* literally, under all circumstances.[16] *Dorsey v. Chesapeake & Ohio Railway Co.*, 476 F.2d 243 (4th Cir. 1973). Having reached such a conclusion, however, that court was placed in the position of having to fashion a remedy for injured employees whose resort to the Board has been time barred while relying on the union.

In *Harrison v. United Transportation Union*, 530 F.2d 558 (4th Cir.1975), that problem was resolved in favor of allowing the aggrieved employee to recover compensatory damages from the union for *both* the incremental loss resulting from the union's handling of the grievance *and* for the harm caused by the employer's initial breach of the collective bargaining agreement.

It does not appear, however, that a union could ever be held legally accountable for damages caused solely by an employer's actions. *See e.g. Bowen v. United Postal Service, supra; International Brotherhood of Electrical Workers v. Foust, supra; Czo-* sek v. O'Mara, supra; Harrison v. United Transportation Union*, 530 F.2d at 564–67 (dissenting opinion). Though the precise question of a union's potential liability for damages caused *solely* by the underlying breach of the collective bargaining agreement was not before the court,[17] the broad language in the Supreme Court's most recent statement on the relative liability of the parties in these cases seems dispositive of the issue. In *Bowen,* the Court held that in a wrongful discharge case where the employee claims that the union violated its duty of fair representation, damages awarded must be apportioned between the employer and the union according to the relative fault of each, with the union bearing the responsibility for the increase in lost compensation and other damages caused by its refusal to process the grievance. Even were the issue still legally arguable, we also do not believe that, from a policy viewpoint, a union should be accountable for damages not in any way caused by its own breach. The result in many instances would be to immunize an admittedly wrongful employer from liability for its own actions. Such a rule would also effectively remove from a union much of its discretion over the decision of whether or not to process a grievance. The threat of such total liability for an employer's wrongs would likely push a union into processing all grievances out of

---

Railroad Trainmen v. Terminal Co., 394 U.S. at 383, 89 S.Ct. at 1117 (applying NLRA principles to resolve issues in RLA context).

**15.** Compare *Schum v. Buffalo Railway Co.*, 496 F.2d 328 (2d Cir.1974); *Otero v. International U. of Elec. R. & M. Wkrs. (IUE)*, 474 F.2d 3 (9th Cir.1973); *Conrad v. Delta Air Lines, Inc.*, 494 F.2d 914 (7th Cir.1974); *Pratt v. United Airlines, Inc.*, 468 F.Supp. 508 (N.D.Calif.1978); *Hennenbury v. United Transport Workers Union of America, Local 507*, 485 F.Supp. 1319 (Mass.1980) and *Harrison v. United Transportation*, 530 F.2d 558 (4th Cir.1975); *Haney v. Chesapeake & Ohio Ry.*, 498 F.2d 987 (D.C.Cir. 1974); *Hill v. Southern Ry.*, 402 F.Supp. 414 (W.D.N.C.1975); *Goclowski v. Penn Central Transportation Co.*, 571 F.2d 747 (3rd Cir. 1978).

**16.** It is arguable that the Fourth Circuit cases are distinguishable from the instant case on their facts. There, the court was discussing

situations where the employees had *chosen* to pursue in-court remedies rather than to present their claims to the Board. The language in those cases is so explicit and so broad, however, that we appear compelled to accept them as espousing a position which is directly contrary to the one we now take.

**17.** The precise issue before the court was whether the union could be held liable for the amount of lost compensation accruing after the date of a hypothetical arbitration decision, which decision would have resulted in reinstatement had the union properly processed the employee's grievance. The court held that the union was not immune from liability for incurred losses caused by its breach of the duty of fair representation merely because those losses took the form of lost compensation or wages.

an abundance of caution.[18] Accordingly, we find the Fourth Circuit's resolution of the issue untenable.

In *Schum v. Buffalo Railway Co.*, 496 F.2d 328 (2d Cir.1974), the Second Circuit adopted the exact stance we take here. At least two district courts have expressly followed the pronouncement in *Schum* in similar cases under the RLA, *Pratt v. United Airlines, Inc., supra* and *Hennenbury v. United Transport Workers Union of America, Local 507,* 485 F.Supp. 1319 (Mass.1980), and several circuits have impliedly agreed with its reasoning. *See Otero v. International U. of Elec., R. & M. Wkrs. (IUE),* 474 F.2d 3 (9th Cir.1973); *Conrad v. Delta Air Lines, Inc.,* 494 F.2d 914 (7th Cir.1974). In fact, *Schum* supplied the primary basis for the trial court's original decision to deny the 12(b)(1) motion in the instant case. Obviously, it is the result reached by these courts which we find most persuasive.

Neither the Supreme Court's holding in *Andrews,* nor prior decisions of this Court require a contrary result. In *Andrews,* the plaintiffs had specifically chosen to forego personal resort to the Board for apparent tactical reasons. The precise holding of *Andrews* states:

> Thus, the notion that the grievance and arbitration procedures provided for minor disputes in the Railway Labor Act are optional, to be availed of as the employee or carrier chooses, was never good history and is no longer good law.

*Andrews v. Louisville & Nashville R. Co., supra,* 406 U.S. at 322, 92 S.Ct. at 1564. Further, the Court expanded on its finding that in "some situations" the administrative remedy provided is an "exclusive" one by noting:

> A party who has litigated an issue before the Adjustment Board on the merits may not relitigate that issue in an independent judicial proceeding. He is limited to the judicial review of the Board's proceeding that the Act provides. *In such a case* the proceedings afforded by 45 U.S.C. § 153 First (i), will be the only remedy available to the aggrieved party.

*Id.* at 325, 92 S.Ct. at 1565 (emphasis added) (citations omitted). Thus, it is clear that the precise issues already addressed and resolved by the Supreme Court are not the same as those we now consider.

Similarly, in *McKinney v. International Association of Machinists, supra,* the plaintiff before the Court had also *chosen* not to go before the Board. Beyond this, however, the posture of *McKinney* further distinguishes it from the instant case. There, the court was considering the lower court's decision to grant a summary judgment in favor of a carrier-employer. As such, the panel was able to consider and, more significantly, *to reject* the merits of the plaintiff's claim against the union. Where it is clear from the outset that there is no bonà fide claim against the union, the rationale upon which we base our decision regarding

18. In *International Brotherhood of Electrical Workers v. Foust,* 442 U.S. at 48, 99 S.Ct. at 2125, the Supreme Court addressed the impact of a rule which places additional liability on the unions:

> ... [T]he threat of large punitive sanctions would likely affect the Union's willingness to pursue individual complaints. However, offsetting any potential benefits is the possibility that punitive awards could impair the financial stability of unions and unsettle the careful balance of individual and collective interests which this Court has previously articulated in the unfair representation area....
>
> Additionally, the prospect of punitive damages in cases would curtail the broad discretion that *Vaca* afforded unions in handling grievances....

> Union discretion is essential to the proper functioning of the collective bargaining system. Union supervision of employee complaints promotes settlements, avoids processing of frivolous claims, and strengthens the employer's confidence in the Union.
>
> ... In order to protect against a future punitive award of unforeseeable magnitude, unions might feel compelled to process frivolous claims or resist fair settlements .... Absent clear congressional guidance, we decline to inject such an element of uncertainty into union decisions regarding their representative functions.

The concerns with the effect on union stability and proper functioning are precisely the same when considering the Fourth Circuit's stance in *Harrison.*

access to jurisdiction in these cases would no longer control.[19]

## V

We must at this point emphasize the narrow scope of our decision.[20] The rule requiring resort to the Board continues, one still may not forum shop between the Board and the courts. We are not importing the LMRA cases wholesale into the RLA context; the two statutory schemes clearly remain distinct. To the limited extent that we do look to cases decided under the LMRA, we are simply borrowing the rationale of those cases in this limited circumstance where the statutorily-established grievance and arbitration procedures have failed to function as intended. *Cf. Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co., supra,* 394 U.S. at 384, 89 S.Ct. at 1118. We decide as we do here in an effort to preserve the purposes of the RLA, not to ignore them.

The burden on the plaintiff remains extreme. First Kaschak must establish that his failure to personally request arbitration before the Board was justifiable.[21] He essentially must show that the Union breached its duty of representation by not processing his grievance and that it was reasonable

for him to rely on the fact that they would not breach that duty. Only once such an important initial showing is made can the plaintiff proceed to pursue his claim against his employer, where he will then bear the burden of showing that his discharge was contrary to the collective bargaining agreement.

REVERSED and REMANDED.

CELEBREZZE, Senior Circuit Judge, concurring.

Although I believe that the district court, and thus this court, has the power to grant Mr. Kaschak the relief he seeks, the majority fails to clearly indicate the source from which this power is derived. Mr. Kaschak asserts jurisdiction based upon 28 U.S.C. Secs. 1331 and 1337,[1] and thus his action may be maintained only if it "arises under" the laws of the United States. The majority, however, fails to address this jurisdictional basis. Instead, the majority states that "the RLA is quasi-contractual in nature, creating legally enforceable obligations enforceable by whatever means appropriate," and concludes that a remedy need not be implied in this instance. Whatever the merits of this analysis, I prefer to rely on less novel principles concerning federal

---

**19.** This Court's unpublished order in *Davis v. River Terminal Railway Co.,* 652 F.2d 57 (6th Cir.1981), *reh. denied,* April 17, 1981 is distinguishable for the same reasons that *McKinney* is not controlling.

**20.** The Second Circuit holding in *Schum* is itself extremely narrow. That court specifically noted that its prior decision in *O'Mara v. Erie Lackawanna R.R. Co.,* 407 F.2d 674 (2d Cir. 1969), *aff'd. sub nom., Czosek v. O'Mara,* 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970) did *not* require a contrary result. It distinguished that case, which refused court jurisdiction to allegedly aggrieved employees who had also made a claim against the union, as follows:

There it appeared that the plaintiffs were fully cognizant of their right to proceed on their own through the grievance machinery when the union had refused to process their grievance. Moreover, there was no allegation that the union's breach of its duty of fair representation was the operative cause of the plaintiff's failure to exhaust contractual remedies. These factual distinctions markedly distinguish *O'Mara* from the case at bar.

496 F.2d at 332. These distinctions are well taken and would likely affect the outcome of the present case as well.

**21.** *See Retana v. Apartment, Motel, Hotel & Elevator Operators Union, Local No. 14, AFL–CIO,* 453 F.2d 1018, 1026 (9th Cir.1972); *Schum v. So. Buffalo Railway Co.,* 496 F.2d 328.

**1.** 28 U.S.C. Sec. 1331 provides:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

28 U.S.C. Sec. 1337(a) provides, in part:

The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce . . .

The term "arising under" has the same meaning under both statutory provisions. *E.g., Michigan Sav. & Loan League v. Francis,* 683 F.2d 957, 960, n. 6 (6th Cir.1982); *Maritime Service Corp. v. Sweet Brokerage de Puerto Rico, Inc.,* 537 F.2d 560 (1st Cir.1976).

jurisdiction. In my view, implication of a remedy is the most appropriate means of establishing federal question jurisdiction when a party requests relief not expressly provided by Congress. Because I believe that the facts of this case warrant the implication of a remedy, I concur with the majority's conclusion that the federal district court has the power to hear Mr. Kaschak's complaint so long as he is able to establish that the union breached its duty of fair representation, that he relied on the union to process his grievance, and that such reliance was reasonable.

A question "arises under" federal law when a party asserts a federal remedy to vindicate a federal right, *see, e.g., T.B. Harms Co. v. Eliscu,* 339 F.2d 823, 836 (2nd Cir.), *cert. denied,* 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1964); the federal remedy may be either express or implied. *Compare Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (federal constitutional right and implied federal remedy), *with Crane v. Cedar Rapids & I.C.R.,* 395 U.S. 164, 166–67, 89 S.Ct. 1706, 1708, 23 L.Ed.2d 176 (federal right and state cause of action). The Railway Labor Act imposes a duty on all carriers to " . . . . exert every reasonable effort to make and maintain agreements concerning rates of pay, rules and working conditions, and to settle all disputes [which arise] out of the application of such agreements. . . ." 45 U.S.C. Sec. 152 First. The mere existence of a statutory duty, *without more,* however, does not establish federal jurisdiction,[2] *e.g. Merrill, Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 1837, 72 L.Ed.2d 182 (1982); *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Chicago & N.W.R.R. v. Transportation Union,* 402 U.S. 570, 577, 91 S.Ct. 1731, 1735, 29 L.Ed.2d 187 (1970); the statutory duty must be enforceable through some federal remedy.

As the majority notes, the federal administrative remedy expressly provided by Congress has been frustrated. The Railway Labor Act provides a comprehensive administrative scheme for the resolution of minor disputes. First, the Act specifies a procedure whereby the parties' representatives may voluntarily resolve disputes. 45 U.S.C. Sec. 152, Second, Sixth. When a minor dispute cannot be resolved in such a fashion, the Act requires the submission of the dispute to the appropriate division of the Adjustment Board. 45 U.S.C. Sec. 153 First (i). *See, e.g., Andrews v. Louisville & Nashville Railroad,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). Judicial review of Adjustment Board orders is limited by Sec. 153 First (q). Kaschak alleges that he relied on the union to process his grievance and that the administrative remedy normally available was foreclosed because the union breached its duty of fair representation. Consequently, Kaschak brought his minor dispute directly to the federal district court—a remedy not expressly provided by Congress. When the sole remedy provided by Congress is frustrated by unanticipated events, a federal court must consider

**2.** The majority relies on *Chicago & N.W. R.R. v. Transportation Union,* 402 U.S. 570, 91 S.Ct. 1731, 29 L.Ed.2d 187 (1970) to support the proposition that this court is relieved from applying the implication doctrine. *Chicago & N.W. R.R.* involved an attempt by a carrier to enjoin a threatened union strike. First, the Supreme Court determined that 45 U.S.C. Sec. 152 First imposed legal obligations and that these obligations were mutual. *Id.* at 574–78, 91 S.Ct. at 1733–1735 (carriers, unions, and employees subject to the Act owed a responsibility to each other to observe the obligations imposed by Sec. 152 First). *See,* Note 4, *infra.* As the Supreme Court indicated, however, the mere existence of these mutual obligations did not establish subject-matter jurisdiction. *Id.* at 578, 91 S.Ct. at 1735 ("given that Sec. 2 First imposes a legal obligation on the parties, the question remains whether it is an obligation enforceable by the judiciary.") Second, the Supreme Court considered Congress' intent to either afford or to deny a particular remedy. *Id.* at 578, 91 S.Ct. at 1735 ("the legislative history is unclear.") Third, the Court considered whether such a remedy was consistent with the purposes underlying the provisions of the Railway Labor Act. *Id.* ("the propriety of judicial enforcement turns upon the importance of the duty in the scheme of the Act.") Not coincidentally, these factors are essentially the same factors listed by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) to determine if courts may imply remedies not expressly provided by Congress.

whether the implication of an auxiliary remedy is appropriate.

In 1975, the Supreme Court refined the implied remedy doctrine to provide a more efficient means of determining whether a federal statute includes a private right of action.[3] *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). In *Cort,* the Supreme Court listed four factors which it previously had recognized as relevant to the question whether Congress intended to provide a federal cause of action. First, is the individual requesting relief "one of the class for whose special benefit the statute was enacted?" *Cort v. Ash,* 422 U.S. 66, 78, 80, 95 S.Ct. 2080, 2087, 2089, 45 L.Ed.2d 26 (1975) ("that is, does the statute create a federal right in favor of the plaintiff?"), quoting *Texas & Pacific R.R. v. Rigsby,* 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916). *See, e.g., Merrill, Lynch, Pierce, Fenner & Smith v. Curran, supra,* 102 S.Ct. at 1836–37, n. 51 (1982); *Chicago & N.W. R.R. v. Transportation Union,* 402 U.S. 570, 578, 91 S.Ct. 1731, 1735, 29 L.Ed.2d 187 (1971). Second, has Congress expressly or implicitly indicated an intent to either provide or deny the remedy sought? *Cort v. Ash,* 422 U.S. 66, 78, 82, 95 S.Ct. 2080, 2087, 2089, 45 L.Ed.2d 26 (1975). *See, e.g., Merrill, Lynch, Pierce, Fenner & Smith, supra,* 102 S.Ct. at 1836–37, n. 51 (May 2, 1982); *National Railroad Passenger Corp. v. National Assn. of Railroad Passengers,* 414 U.S. 453, 458, 460, 94 S.Ct. 690, 693, 694, 38 L.Ed.2d 646 (1974); *Chicago & N.W. R.R. v. Transportation Union,* 402 U.S. 570, 580, 91 S.Ct. 1731, 1736, 29 L.Ed.2d 187 (1971). Third, would the implication of a remedy be consistent with the underlying purposes of the legislative scheme? *Cort v. Ash,* 422 U.S. 66, 78, 84, 95 S.Ct. 2080, 2087, 2090, 45 L.Ed.2d 26 (1975). *See, e.g., Merrill, Lynch, Pierce, Fenner & Smith v. Curran, supra,* 102 S.Ct. at 1836–37, n. 51 (1982); *Chicago & N.W. R.R. v. Transportation Union,* 402 U.S. 570, 580, 91 S.Ct. 1731, 1736, 29 L.Ed.2d 187 (1971). And fourth, would an implication of a remedy be inappropriate because the cause of action is one traditionally relegated to state law? *Cort v. Ash,* 422 U.S. 66, 78, 84, 95 S.Ct. 2080, 2087, 2090, 45 L.Ed.2d 26 (1975). *See, e.g., Merrill, Lynch, Pierce, Fenner & Smith v. Curran, supra,* 102 S.Ct. at 1836–37, n. 51 (1982); *Wheeldin v. Wheeler,* 373 U.S. 647, 652, 83 S.Ct. 1441, 1445, 10 L.Ed.2d 605 (1963).

The first part of the *Cort* test concerns the question whether 45 U.S.C. Sec. 152 First of the Railway Labor Act was enacted for the benefit of employees.[4] The Supreme Court has characterized 45 U.S.C. Sec. 152 First as the "heart of the Railway Labor Act." *Railroad Trainmen v. Terminal Co.,* 394 U.S. 369, 377–78, 89 S.Ct. 1109, 1114–1115, 22 L.Ed.2d 344 (1969). *See, e.g., Union Pacific R.R. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978). Congress enacted 45 U.S.C. Sec. 153 First (i), the administrative remedy, to enforce the obligations imposed by 45 U.S.C. Sec. 152 First. The fact that Congress created such a remedy reveals that the obligations imposed on carriers by Sec. 152 First were intended to benefit employees. Thus, this factor supports the implication of a federal court remedy.

---

**3.** The majority asserts that "the more exacting test for determining when a non-express remedy exists" should not apply to "older broad statutory schemes" such as the Railway Labor Act. I agree that the *reason* the Supreme Court refined the implied remedy doctrine in 1975 was to provide a more efficient means of interpreting increasingly complex legislation. *Merrill, Lynch, Pierce, Fenner & Smith v. Curran, supra,* 102 S.Ct. at 1837–39. I also agree that the complexity of the legislation is relevant to Congress' intent to either provide or to deny a particular remedy. I can discern no reason, however, for refusing to accept the benefits which accompany a more refined means of determining legislative intent. Consequently, I apply the *Cort* test to determine the appropriateness of implying a remedy under the Railway Labor Act.

**4.** The question whether a statute imposes a legal obligation and the question whether a statute is enacted for the especial benefit of a particular class of litigants are distinct. The former is the threshold question. A court must first determine whether the statute in dispute imposes a legal obligation before it entertains questions concerning the intended beneficiaries of the obligations. The first part of the *Cort* test concerns the second question: to whom is the obligation owed?

A review of the legislative history of the Railway Labor Act indicates that Congress did not anticipate the frustration of the federal administrative remedy which it provided. Consequently, the analysis must focus upon the implicit intent of Congress. As a general rule of statutory construction, when Congress enacts "a comprehensive legislative scheme [which includes] an integrated system of procedures for enforcement" of statutory duties, we assume that Congress deliberately intended to omit remedies not expressly provided. *Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. 77, 97, 101 S.Ct. 1571, 1584, 67 L.Ed.2d 750 (1981). The courts may also assume that Congress intends consequences which are consistent with the underlying purposes of the Act. Under the Railway Labor Act, Congress has provided a remedy for the enforcement of a carrier's statutory duty to abide by the terms of a collective bargaining agreement. As the majority notes, however, if Kaschak is not permitted to proceed with this action, he would be without an adequate remedy—a result inconsistent with the underlying purposes of the Act. *See, e.g., Steel v. Louisville & Nashville R.R.,* 323 U.S. 192, 207, 65 S.Ct. 226, 234, 89 L.Ed. 173 (1944). In light of the conflict between the general rule of the statutory construction and the policies of the Act, Congress' intent to afford relief of this nature is unclear.

The implication of a remedy in this instance is consistent with the policies underlying the Railway Labor Act. The primary purpose of the Railway Labor Act is the protection of interstate commerce from the disruption which accompanies labor instability. *E.g., Union Pacific R.R. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978). The administrative scheme which Congress enacted to provide for the fair and efficient resolution of minor disputes between carriers and their employees is central to the Act's primary purpose.

*See, e.g., Union Pacific R.R. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978); *Chicago & N.W. R.R. v. Transportation Union,* 402 U.S. 570, 580, 91 S.Ct. 1731, 1736, 29 L.Ed.2d 187 (1971). Although the Supreme Court has concluded that the mandatory administrative provisions of the Railway Labor Act are evidence of Congress' intent to keep minor disputes between carriers and their employees out of the federal courts, *e.g., Union Pacific R.R. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978); *Trainmen v. Chicago R. & I.R. R.,* 353 U.S. 30, 40, 77 S.Ct. 635, 640, 1 L.Ed.2d 622 (1957), the administrative scheme established by Congress serves the underlying purposes of the Act only to the extent that it functions effectively. To deny a substitute remedy is to value the administrative scheme more than its primary purpose. Further, the implication of a remedy in the narrow circumstances outlined by the majority will not result in undue interference with the administrative scheme which Congress has enacted.[5] Thus, I believe that the policies underlying the Railway Labor Act support the implication of a remedy.

Finally, we must consider whether the implication of a federal remedy would be inappropriate because a wrongful discharge claim under the Railway Labor Act is a matter traditionally left to state law. Congress has pre-empted the right of states to provide a remedy to compensate employees who are wrongfully discharged. *E.g., Andrews v. Louisville & Nashville R.R.,* 406 U.S. 320, 323, 92 S.Ct. 1562, 1564, 32 L.Ed.2d 95 (1972). Thus, the implication of a federal court remedy does not represent an unwarranted intrusion into an area of law traditionally relegated to the states.

In summary, Kaschak asserts jurisdiction based on 28 U.S.C. Secs. 1331, 1337. A question arises under federal law when a party asserts a federal remedy to vindicate a federal right. Although 45 U.S.C. Sec.

---

**5.** In determining whether to imply a remedy, courts must consider the effect that implying a remedy will have on the existing administrative scheme. If implication will result in disturbing carefully considered legislation, then implica-

tion is not consistent with the underlying purposes of the federal statute. *See Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. 77, 97, 101 S.Ct. 1571, 1584, 67 L.Ed.2d 750 (1981).

152 First creates a federal right in favor of Kaschak, the concomitant federal administrative remedy has been frustrated. This court may exercise jurisdiction, however, if it can imply an auxiliary federal court remedy. Because I believe that the facts of this case warrant the implication of a federal court remedy, I concur in the judgment.